CROSNER LEGAL, P.C.
Michael T. Houchin (SBN 305541)
mhouchin@crosnerlegal.com
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERRICK YOUNG, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLAGSTONE FOODS, LLC.,<br><br>Defendant. | Case No.  5:25-cv-01009<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

1

<strong>CROSNER LEGAL, P.C.</strong>

<u>**INTRODUCTION**</u>

2      1.      Plaintiff Derrick Young ("Plaintiff") on behalf of himself, all others

3  similarly situated, and the general public, by and through his undersigned counsel,

4  hereby brings this action against Flagstone Foods, LLC ("Defendant"), and upon

5  information and belief and investigation of counsel, alleges as follows:

6      2.      This is a California consumer class action for violations of the

7  Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), Unfair

8  Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and for

9  breach of express warranty.

10     3.      Defendant manufactures, distributes, advertises, markets, and sells

11  Emerald Nuts products. The packaging prominently displays on the front of the

12  label the claim that these Products[1] contain "**No Artificial Flavors, Preservatives,**

13  **or Synthetic Colors.**"

14     4.      This statement is false. Each of the Products are made with

15  manufactured citric acid— an artificial preservative ingredient used in food and

16  beverage products.

17     5.      Defendant's packaging, labeling, and advertising scheme is intended

18  to give consumers the impression that they are buying a premium product that

19  contains no artificial preservatives.

20     6.      Plaintiff, who purchased the Products in California, was deceived by

21  Defendant's unlawful conduct and brings this action on his own behalf and on

22  behalf of California consumers to remedy Defendant's unlawful acts.

<u>**JURISDICTION AND VENUE**</u>

23     7.      This Court has original jurisdiction over this action pursuant to 28

24  U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100

---

[1] "Products" means all Emerald Nuts products labeled as containing "No
Artificial… Preservatives" that include citric acid as an ingredient.

1

members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

8.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Products in California, specifically in this judicial district. The marketing of the Products, including the decision of what to include and not include on the labels, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Products to consumers in California, including Plaintiff. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Products to Plaintiff and members of the Class in California. By distributing and selling the Products in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiff and the Class that Defendant knows is likely to be suffered by Californians.

9.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Plaintiff purchased the Products within this District.

## PARTIES

10.     Defendant Flagstone Foods, LLC is a Delaware limited liability company that maintains its principal place of business in Minneapolis, Minnesota. At all times during the class period, Defendant was the manufacturer, distributor, marketer, and seller of the Products.

CROSNER LEGAL, P.C.

CLASS ACTION COMPLAINT

11.     Plaintiff Derrick Young is a resident of San Bernandino County, California. Plaintiff purchased the Products during the class period in California. Plaintiff relied on Defendant's deceptive advertising and labeling claims as set forth below.

**FACTUAL ALLEGATIONS**

**"NO ARTIFICIAL…PRESERVATIVES" IS PROMINENTLY DISPLAYED ON THE FRONT LABELS OF THE PRODUCTS**

12.     The front labels for each of the Products prominently state that the Products contain "No Artificial…Preservatives" thereby misleading reasonable consumers into believing that the Products are free from artificial preservative ingredients. However, each of the Products contain an artificial preservative called manufactured citric acid. Below is an example of a label for one of the Products:



# INGREDIENTS

CASHEWS, PEANUT OIL, SEASONING (SALT, RICE FLOUR, MALTODEXTRIN, BLACK PEPPER, YEAST EXTRACT, SPICE, ONION POWDER, GARLIC POWDER, CITRIC ACID, NATURAL FLAVOR).

### THE MANUFACTURED CITRIC ACID IN THE PRODUCTS IS ARTIFICIAL

13.    Defendant uses artificial manufactured citric acid in the Products.[2] Commercial food manufactures, including Defendant, use a synthetic form of citric acid that is derived from heavy chemical processing.[3] Commercially produced citric acid is manufactured using a type of black mold called *Aspergillus niger* which is modified to increase citric acid production.[4] Consumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath.[5] Defendant does not use natural citric acid extracted from fruit in the Products. This is because "[a]proximately 99% of the world's production of [citric

---

[2] Iliana E. Sweis, et al., *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports*, TOXICOL REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/ and attached as **Exhibit A**.

[3] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/

[4] *Id*; Pau Loke Show, et al., *Overview of citric acid production from Aspergillus niger*, FRONTIERS IN LIFE SCIENCE, 8:3, 271-283 (2015), available at https://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653

[5] Sweis, *et al.*, **Exhibit A**.

4

CLASS ACTION COMPLAINT

acid] is carried out using the fungus *Aspergillus niger* since 1919."[6] As explained by a study published in the *Toxicology Reports Journal*:

> Citric acid naturally exists in fruits and vegetables. However, **it is *not* the naturally occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food and beverage additive**. Approximately 99% of the world's production of MCA is carried out using the fungus *Aspergillus niger* since 1919. *Aspergilus niger* is a known allergen.[7]

14.    A technical evaluation report for citric acid, compiled by the United States Department of Agriculture Marketing Servies ("USDA AMS") further explains that it is not commercially feasible to use natural citric acid extracted from fruits:

> "Traditionally by extraction from citrus juice, [is] no longer commercially available. It is now extracted by fermentation of a carbohydrate substance (often molasses) by citric acid bacteria, *Aspergillus niger* (a mold) or *Candida guilliermondii* (a yeast). Citric acid is recovered from the fermentation broth by a lime and sulfuric acid process in which the citric acid is first precipitated as a calcium salt and then reacidulated with sulfuric acid."[8]

15.    As one of the USDA AMS reviewers commented:

> "[Citric acid] is a natural[ly] occurring substance that commercially goes through numerous chemical processes to get to [its] final usable form. This processing would suggest that it be ***classified as synthetic***."[9]

---

[6] *Id.*

[7] *Id.*

[8] **Exhibit B** at page 6.

[9] **Exhibit B** at page 5 (emphasis added)

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

16.    When asked "Is this substance Natural of Synthetic?" USDA AMS reviewers state: "synthetic."[10]

17.    Manufactured citric acid contains residues of synthetic chemicals. The *Toxicology Reports Journal* article explains that "the potential presence of impurities or fragments from the *Aspergillus niger* in [manufactured citric acid] is a significant difference that may trigger deleterious effects when ingested."[11] The article further explains:

> Given the thermotolerance of A. niger, there is great potential that byproducts of A. niger remain in the final [manufactured citric acid] product. Furthermore, given the pro-inflammatory nature of A. niger even when heat-killed, repetitive ingestion of [manufactured citric acid] may trigger sensitivity or allergic reactions in susceptible individuals. Over the last two decades, there has been a significant rise in the incidence of food allergies.[12]

18.    The Food and Drug Administration ("FDA") explains that the "Solvent extraction process for citric acid" is accomplished via "recovery of citric acid from conventional *Aspergillus niger* fermentation liquor may be safely used to produce food-grade citric acid in accordance with the following conditions: (a) The solvent used in the process consists of a mixture of n- octyl alcohol meeting the requirements of § 172.864 of this chapter, ***synthetic*** isoparaffinic petroleum hydrocarbons meeting the requirements of § 172.882 of this chapter, and tridodecyl amine. 12 C.F.R. § 173.280 (emphasis added). Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Products from *aspergillus niger* fermentation liquor. See 21 C.F.R § 173.280. The citric acid that Defendant uses

---

[10] **Exhibit B** at pages 4-5.

[11] Sweis, *et al.*, **Exhibit A**.

[12] *Id.*

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

in the Products is produced through chemical solvent extraction and contains residues of those chemical solvents.

19.    The FDA has determined that manufactured citric acid is not natural; it is artificial.  The FDA has sent warning letters to companies stating that certain products labeled as "natural" are misbranded because they contain citric acid as an ingredient. For example, on August 29, 2001, the FDA sent Hirzel Canning Company ("Hirzel") a warning letter regarding its canned tomato products.[13] With respect to Hirzel's Chopped Tomatoes Onions & Garlic and Chopped Mexican Tomatoes & Jalapenos, the FDA stated that these products could not bear the "All Natural" claim on the label because the products contained a synthetic ingredient, citric acid.[14]

20.    Similarly, on August 16, 2001, the FDA sent Oak Tree Dairy Farm, Inc. ("Oak Tree") a warning letter regarding its "Oaktree Real Brewed Iced Tea," "Oaktree Fruit Punch," and "Oaktree All Natural Lemonade" products.[15] With respect to Oak Tree's "Oaktree Real Brewed Iced Tea," the FDA stated that this product could not bear the "100% Natural" and "All Natural" claims on the label because the product contained a synthetic ingredient, citric acid.[16]

21.    The Environmental Protection Agency ("EPA") provides the following simple schematic of the manufacturing process for citric acid which includes the use of synthetic solvents like sulfuric acid:[17]

---

[13] *See* **Exhibit C** attached hereto.

[14] *Id.*

[15] *See* **Exhibit D** attached hereto.

[16] *Id.*

[17] *See* **Exhibit E** attached hereto.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.



22.     Dr. Ryan Monahan, a prominent functional medicine practitioner, notes that the "[p]resent day process of creating manufactured citric acid involves feeding sugars derived from GMO corn to black mold, which then ferments to form manufactured citric acid."[18] Dr. Monahan also notes that "*Aspergillus niger* is associated with systemic inflammatory issues, including respiratory, gastrointestinal, neurological and musculoskeletal. Due to the potential for fragments of *Aspergillus niger* to make their way into the finished product of manufactured citric acid, this toxic inflammatory substance is likely being ingested by consumers of products containing citric acid. Even with high-heat processing to kill it, research has shown *Aspergillus niger* can still elicit an inflammatory response."[19]

23.     Clinical Nutritionist Serge Gregoire, notes that [f]ood manufacturers leave out that citric acid is derived from genetically modified black mold grown on GMO corn syrup" and that "[c]ompanies continuously capitalize on an ignorance-based market."[20] Gregoire states, "Citric acid production has become a

---

[18] Dr. Ryan Monahan, *Citric Acid: A Common Food Additive With An Uncommon Source* (2024) *available at* https://www.peacefulmountainmedicine.com/post/citric-acid-a-common-food-additive-with-an-uncommon-source

[19] *Id.*

[20] Serge Gregoire, Avoid citric acid: a mold byproduct! (July 13, 2021) *available at* https://www.linkedin.com/pulse/avoid-citric-acid-mold-byproduct-serge-gregoire/

CLASS ACTION COMPLAINT

refined and highly prized industrial process." Gregoire note that the Aspergillus niger used to produce citric acid is engineered to increase production of citric acid which has "resulted in countless generations of genetically modified mutant variants, now specialized for industrial-scale economics."[21]

24.     Below is a schematic representation of the metabolic reactions involved in citric acid production, the enzymes (italics), the known feedback loops (dashed lines) and their locations within the cellular structure of *Aspergillus niger*:[22]



---

[21] *Id.*

[22] Show, P. L., Oladele, K. O., Siew, Q. Y., Aziz Zakry, F. A., Lan, J. C. W., & Ling, T. C. (2015). *Overview of citric acid production from Aspergillus niger.* FRONTIERS IN LIFE SCIENCE, 8(3), 271–283, *available at* https://doi.org/10.1080/21553769.2015.1033653

25.    Dictionary definitions define "artificial" as something made by man. For example, "artificial" is defined as "made by human skill; produced by humans …"[23] Merriam-Webster's online dictionary states that "artificial" means "humanly contrived …"[24]  Cambridge Dictionary states that "artificial" means "made by people, often as a copy of something natural."[25]

26.    Below are images of the chemical process used to create manufactured citric acid for use in food and beverage products – a process that is visibly artificial:



---

[23] *Artificial*, DICTIONARY.COM, *available at* https://www.dictionary.com/browse/artificial

[24] *Artificial*, MERRIAM-WEBSTER'S DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/artificial

[25] *Artificial*, CAMBRIDGE DICTIONARY, *available at* https://dictionary.cambridge.org/us/dictionary/english/artificial

 

### THE MANUFACTURED CITRIC ACID IN THE PRODUCTS FUNCTIONS AS A PRESERVATIVE

27.    Citric acid also acts as a preservative when added to food products, including the Products at issue. The FDA defines a preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5). The FDA has listed citric acid as a preservative in its "Overview of Food Ingredients, Additives and Colors" as shown below:[26]

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

---

[26] *Overview of Food Ingredients, Additives & Colors,* FOOD AND DRUG ADMINISTRATION, *available at* https://web.archive.org/web/20220901032454/http://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors

CLASS ACTION COMPLAINT

28.    In a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc., the FDA warned that certain products were misbranded under the Federal Food Drug and Cosmetics Act because they "contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphasis added).[27]

29.    The Encyclopedia Britanica also classifies citric acid as a preservative because it has antioxidant properties, as shown below[28]:

## Preservatives

Food preservatives are classified into two main groups: antioxidants and antimicrobials. Antioxidants are compounds that delay or prevent the deterioration of foods by oxidative mechanisms. Antimicrobial agents inhibit the growth of spoilage and pathogenic microorganisms in food.

| Food preservatives | |
| --- | --- |
| **chemical agent** | **mechanism of action** |
| **Antioxidants** | |
| ascorbic acid | oxygen scavenger |
| butylated hydroxyanisole (BHA) | free radical scavenger |
| butylated hydroxytoluene (BHT) | free radical scavenger |
| citric acid | enzyme inhibitor/metal chelator |
| sulfites | enzyme inhibitor/oxygen scavenger |
| tertiary butylhydroquinone (TBHQ) | free radical scavenger |
| tocopherols | free radical scavenger |

---

[27] *See* **Exhibit F** attached hereto.

[28] *Preservatives*, BRITANICA, *available at* https://www.britannica.com/topic/food-additive/Preservatives#ref502211

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

1

2    30.    The Agricultural Marketing Service of the United States Department

3    of Agriculture ("USDA") has also recognized the use of citric acid as a

4    preservative stating that "Citric acid has a wide variety of uses, some of which can

5    provide preservative functions, primarily though lowering the pH of the food."[29]

6    31.    The USDA's Food Safety Inspection Service's "Guideline for Label

7    Approval" states that "[s]ome common chemical preservatives include BHA,

8    BHT, calcium propionate, citric acid, natamycin and sodium propionate."[30]

9    32.    Several academic journals also note the use of citric acid as a

10   preservative.[31] Indeed, "Citric acid acts as a preservative in many processed foods,

11   keeping them fresh. It does this by slowing or helping prevent the formation of

12   bacteria, mold, yeast, and fungus."[32] "Today, citric acid is one of the most common

     and widely-used preservatives in the world[.]"[33]

13

14

15

16   [29] *Citric Acid and Salts*, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at*
17   https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%202
     015.pdf.

18   [30] FSIS Guideline for Label Approval, UNITED STATES DEPARTMENT OF
19   AGRICULTURE, *available at*
     https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-
20   2023-0001.pdf

21   [31] K. Kirimura, et al., *Citric Acid*, COMPREHENSIVE BIOTECHNOLOGY (SECOND
     EDITION) (2011), *available at*
22   https://www.sciencedirect.com/science/article/abs/pii/B9780080885049001690?
     via%3Dihub; K.M.S. Islam, *Use of citric acid in broiler diets*, WORLD'S
23   POULTRY SCIENCE JOURNAL VOL. 68, ISSUE 1 (Feb. 21, 2012), *available at*
     https://www.cambridge.org/core/journals/world-s-poultry-science-
24   journal/article/abs/use-of-citric-acid-in-broiler-
     diets/DA15C2C1F90667525BF2414DF3BFF646 ("Citric Acid (CA) is a weak
25   organic acid which is a natural preservative and can add an acidic or sour taste to
     foods and soft drinks.").
26
     [32] *What is citric acid, and what is it used for?,* MEDICAL NEWS TODAY (July 23,
27   2021), *available at* https://www.medicalnewstoday.com/articles/citric-acid

28   [33] *Citric Acid: One of the Most Important Preservatives in The World,* FBC
     INDUSTRIES, INC. (Feb. 5, 2019), *available at* https://fbcindustries.com/citric-
     acid-one-of-the-most-important-preservatives-in-the-world/

CLASS ACTION COMPLAINT

33.    Citric acid functions as a preservative in the Products regardless of whether Defendant intended to use citric acid as a preservative. Citric acid functions as a preservative even if it is also added to the Products for some other use. *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, *tends to* prevent or retard deterioration") (emphasis added); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or *has the power of preserving*.") (emphasis added).[34]

**REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S FALSE LABELING STATEMENT AND SUFFERED ECONOMIC INJURY**

34.    Consumers, like Plaintiff, relied on Defendant's "No Artificial…Preservatives" labeling statement. The "No Artificial…Preservatives" statement on the labels of the Products is material to reasonable consumers. "[F]oods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[35]

35.    Plaintiff and the putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent. Plaintiff and putative

---

[34] *Preservative,* MERRIAM-WEBSTER'S DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld

[35] *84% of Americans buy "free-from" foods because they believe them to be more natural or less processed*, Mintel (Sept. 3, 2015), *available at* https://www.mintel.com/press-centre/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed/

CROSNER LEGAL, P.C.

class members are entitled to damages and restitution for the purchase price of the Products that were falsely labeled and advertised. Consumers, including Plaintiff, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Products actually contain an artificial preservative ingredient.

## PLAINTIFF'S PURCHASE OF THE PRODUCTS

36.    Plaintiff Derrick Young purchased one of the Products from a retail store located in San Bernardino County, California. Plaintiff saw and relied on the "No Artificial…Preservatives" claim on the labels of the Products. Plaintiff would not have purchased the Products, or would have paid less for the Products, had he known that the products actually contain an artificial preservative ingredient. As a result, Plaintiff suffered injury in fact when he spent money to purchase the Products he would not have purchased, or would have paid less for, absent Defendant's misconduct. Plaintiff desires to purchase the Products again if the labels of the products were accurate and if the products actually contained "No Artificial…Preservatives"    However, as a result of Defendant's ongoing misrepresentations, Plaintiff is unable to rely on the Products' advertising and labeling when deciding in the future whether to purchase the Products.

## NO ADEQUATE REMEDY AT LAW

37.    Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

38.    The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair

advantage over competitor products. Plaintiff and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

39.    A primary litigation objective in this litigation is to obtain injunctive relief. Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant continues to misrepresent the Products as containing "No Artificial…Preservatives"   when the Products actually contain an artificial preservative ingredient. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold products is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements stating that the Products actually contain an artificial preservative ingredient. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation has not yet completed, rendering injunctive relief necessary. Further, because a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

40.    It is premature to determine whether an adequate remedy at law exists. This is an initial pleading and discovery has not yet commenced and/or is

CLASS ACTION COMPLAINT

at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves his right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Class:

> All persons who purchased the Products for personal use in California within the applicable statute of limitations until the date class notice is disseminated.

42.     Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Products from Defendant.

43.     Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

44.     The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

CROSNER LEGAL, P.C.

45.  <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

46.  <u>Commonality</u>: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.  Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.  Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c.  Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public;

d.  Whether Plaintiff and the Class are entitled to injunctive relief;

e.  Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

47.  <u>Typicality</u>: Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

48.  <u>Adequacy</u>: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no

interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

49.    The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.    This class action will assure uniformity of decisions among Class Members;

g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

CLASS ACTION COMPLAINT

h.    Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

50.    Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

51.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and the Class members.

52.    Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

## FIRST CLAIM FOR RELIEF

### Violation of California's Consumers Legal Remedies Act
### Cal. Civ. Code § 1750 *et seq.*

53.    Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

54.    Plaintiff brings this claim under the CLRA individually and on behalf of the Class against Defendant.

55.    At all times relevant hereto, Plaintiff and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

56.    At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

57. At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

58. The purchases of the Products by Plaintiff and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

59. Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling that the Products contain "No Artificial…Preservatives." Defendant failed to disclose that the Products contain an artificial ingredient called citric acid. This is a material misrepresentation and omission as reasonable consumer would find the fact that the Products contain an artificial ingredient to be important to their decision in purchasing the Products. Defendant's representations violate the CLRA in the following ways:

a) Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b) Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c) Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

d) Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

60. Defendant violated the CLRA because the Products were prominently advertised as containing "No Artificial…Preservatives," but, in reality, the Products contain an artificial preservative ingredient called citric acid. Defendant knew or should have known that consumers would want to know that the Products contain an artificial ingredient.

61.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

62.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

63.    Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein. Plaintiff also seeks actual damages, punitive damages, attorneys' fees and costs pursuant to the CLRA.

64.    Pursuant to California Civil Code section 1782, Plaintiff notified Defendant in writing by certified mail of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act. More than 30 days have passed and Defendant has not taken corrective action.

65.    Pursuant to section 1780(d) of the CLRA, attached hereto is an affidavit showing that this action was commenced in a proper forum.

### SECOND CLAIM FOR RELIEF

### Violation of California's Unfair Competition Law

### Cal. Bus. & Prof. Code § 17200 *et seq.*

66.    Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

67.    Plaintiff brings this claim under the UCL individually and on behalf of the Class against Defendant.

68.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

69.    Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as

CROSNER LEGAL, P.C.

set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by breaching express and implied warranties. Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

70.    Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Products contain an artificial preservative) of which they had exclusive knowledge. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

71.    Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Products actually contain no artificial preservatives.

72.    Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and

CROSNER LEGAL, P.C.

omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

73.    Defendant's wrongful business practices and violations of the UCL are ongoing.

74.    Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

75.    Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seeks (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

<u>**THIRD CLAIM FOR RELIEF**</u>

**Breach of Express Warranty**

76.    Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

77.    Plaintiff brings this claim for breach of express warranty individually and on behalf of the Class against Defendant.

78.    As the manufacturer, marketer, distributor, and seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products contain "No Artificial…Preservatives."

79.    Plaintiff and the Class reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the Products, including the representation that the Products contain "No Artificial…Preservatives."

80.    Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and Members of the Class.

81.    In fact, the Products do not conform to Defendant's representations because the Products contain an artificial preservative ingredient called citric acid. By falsely representing the Products in this way, Defendant breached express warranties.

82.    Plaintiff relied on Defendant's (the manufacturer) representations on the Products' labels and advertising materials which provide the basis for an express warranty under California law.

83.    As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class were injured because they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the characteristics of the Products were truthful. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class Members would not have purchased the Products or would not have paid as much as they did for them.

## REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

a.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b.      Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c.      Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d.      Ordering damages in amount which is different than that calculated for restitution for Plaintiff and the Class;

e.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

f.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g.      Ordering such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

Dated: April 24, 2025                          CROSNER LEGAL, P.C.


By:      *Michael T. Houchin*
           MICHAEL T. HOUCHIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
mhouchin@crosnerlegal.com

*Attorneys for Plaintiff and the Proposed Class*

26

CLASS ACTION COMPLAINT

**<u>Affidavit Pursuant to Civil Code Section 1780(d)</u>**

I, MICHAEL T. HOUCHIN, declare as follows:

1.    I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff.

2.    This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act.

3.    Defendant has done, and is doing, business in California, including in this judicial district. Such business includes the marketing, promotion, distribution, and sale of the Products within the State of California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed April 24, 2025 at San Diego, California.

CROSNER LEGAL, P.C.

By:    *Michael T. Houchin*
          MICHAEL T. HOUCHIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
mhouchin@crosnerlegal.com

CROSNER LEGAL, P.C.

CLASS ACTION COMPLAINT